BATTLE, Plaintiff-Appellee, v. PATSY AUTO SALES, INC., et, Defendants-Appellants.

Ohio Appeals, First District, Hamilton County.

No. 7348. Decided February 20, 1951

Harry Falk, Carl B. Rubin, Cincinnati, for plaintiff-appellee.
Peterman, Calhoun & McPherson, Cincinnati, for defendant-appellant, Colonial Finance Co.

## OPINION

By THE COURT:

The plaintiff alleged that he exchanged automobiles with the defendant, Patsy Auto Sales, Inc., and to make up the deficiency in value, he agreed to pay $4,000.00 in 24 equal monthly instalments. He then alleged that without his knowledge this balance was "financed as an instalment note for twenty-four months, which note including the principal of $4,000.00; interest; insurance and other charges not known to the plaintiff, was in the total sum of $5,654.40 payable to the order of Patsy Auto Sales, Inc., at the rate of $235.00 per month." He also alleged that this note was transferred by Patsy Auto Sales, Inc., without recourse to the defendant, Colonial Finance Co., an Ohio corporation, authorized and doing business under the Ohio Small Loan Act.

After alleging the payments he had made on the note, he then alleged that the note provided for interest in excess of the rate allowed by law under the Small Loan Act, and that the entire transaction was arranged as a subterfuge to conceal the exaction of a usurious rate of interest, and that "the said note and chattel mortgage are void."

It will be noted that the plaintiff does not allege that he signed the note with unfilled blanks in it. Nor does he allege that the note was not signed by him. His allegation is that the note is usurious and for that reason is void.

The plaintiff's prayer was for a declaratory judgment defining the rights of the parties, and declaring the note and chattel mortgage to be void, and for other relief.

The defendant, Colonial Finance Company answered, admitting that the plaintiff purchased an automobile from defendant, Patsy Auto Sales, Inc., and executed and delivered to Patsy Auto Sales, Inc., a note for the unpaid balance of the purchase price for the sum of $4,000.00, and that Patsy Auto Sales, Inc., endorsed and delivered said note to Colonial Finance Company "without recourse except for a partial guaranty in the sum of $500.00."

The defendant, Patsy Auto Sales, Inc., answered, admitting that it sold an automobile to the plaintiff, that it received a note secured by chattel mortgage, which it discounted with

the defendant, Colonial Finance Company, and then denied each and every other allegation in the petition.

No reply was filed.

Upon the trial of the issues raised by these pleadings, the court found that the plaintiff "is liable only for the following sum, to-wit: $4,000.00 plus interest at the rate of 8% per annum, plus insurance premium, and said plaintiff shall be credited with the sum of $3999.40 payments on said balance owing." It is from this judgment that this appeal was taken by the defendant, Colonial Finance Company.

No question is raised here as to the sufficiency of the judgment as a declaration of rights. The claim is, rather, that the documents executed by the plaintiff fixed his liability and that inasmuch as the finding of the court departs therefrom it is erroneous.

The record discloses that the plaintiff owned a 1942 Buick automobile which he had bought in 1943, the purchase of which he had financed through the Personal Loan Company on which he owed $400.00, secured by mortgage. He came to the place of business of Patsy Auto Sales, Inc., on July 15th, 1948, and negotiated for the Lincoln automobile referred to in the pleadings in this case. He and Patsy Auto Sales, Inc., agreed on a price of $6,000.00, and that Patsy Auto Sales, Inc., would take title to his Buick and allow him $2000.00 therefor, as a credit, making a balance of $4,000.00 still due Patsy Auto Sales, Inc. There were items of sales tax and insurance premium, amounting to $190.85 added, but they seem to have no significance, although they are included in the principal of the mortgage and note. He paid the balance of $400.00 which he owed on the Buick, transferred title thereto to Patsy Auto Sales, Inc., signed an agreement to buy the Lincoln automobile, and also a chattel mortgage thereon, securing the note.

In the contract or order the details of the transaction are set forth showing the balance of $4,000.00 remaining unpaid. Below this balance on the printed form with blank spaces is provision for insertion of the terms of payment and in the documents introduced in evidence the blank spaces are filled in, showing that the $4,000.00 was to be paid in 24 monthly payments of $235.60 each. However, the plaintiff testified that when he signed this order or contract those blanks were not filled in and that he was told that he could pay the $4,000.00 in 24 monthly payments of $175.00 each. He also signed a chattel mortgage and note, each of which now shows the unpaid balance of $5654.40, with an itemized statement of the transaction showing the amount of $4,000.00, which was the unpaid balance to be financed, and the financing

charge of $1654.40 including insurance. The plaintiff testified that he signed this chattel mortgage and note at the request of Patsy Auto Sales, Inc., but that at the time none of the blank spaces were filled in. The record is very vague as to what was said at the time, but it is clear the plaintiff knew that Patsy Auto Sales, Inc., intended to fill in the blank spaces.

Notwithstanding the plaintiff's testimony that he was told his monthly payments would be $175.00, his first payment was $235.60, and he continued for the next seven months to pay $235.60 per month. Thereafter, he made 26 payments, not one of which was $175.00. It is clear that if he did not authorize the provision for monthly payments, he later ratified it by this conduct.

By §8119 GC, it is provided that a signature on a blank paper, delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. We think the plaintiff's own evidence indicates an actual authority to fill in, but if that is not so, then the law raises a prima facie presumption of authority. And §8119 GC, also provides that if after completion, the note is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given.

In this case, Colonial Finance pleaded the defense of holder in due course, and the defense was not placed in issue by the filing of a reply denying the allegations of the answer.

If this were an action by Colonial Finance Company on this note and the defendant had pleaded the two defenses of usury and that the blanks were filled in for an amount in excess of that authorized, a reply setting forth that Colonial Finance Company was a holder in due course, and that the defendant maker was estopped, would have presented two grounds of avoidance of the defenses.

We are of opinion that the plaintiff herein is estopped from denying at this time that he authorized the Patsy Auto Sales, Inc., to insert $235.60 as the monthly payment and $5,654.40 as the principal of the note. After having acquiesced for months by making payments in accordance with the note, he cannot now be permitted to take a contrary position. 19 Am. Jur., 676, et seq. This conclusion, however, leaves untouched the defense of usury, which, if it existed, could only be avoided by proof that plaintiff was a holder in due course, and there is no proof that Colonial Finance Company was ignorant of any of the facts.

That brings us to a consideration of the true nature of this transaction. In form, the transaction between the plaintiff and Patsy Auto Sales, Inc., is clearly a sale or exchange of automobiles with a note to equalize the difference in value. As between Patsy Auto Sales, Inc., and Colonial Finance Company, the transaction bears the outward form of a sale or negotiation of that note with a partial guaranty to the extent of $500.00 by the payee-endorser. So long as these transactions are accepted at face, at what they purport to be, there can be no usury, because there has been no loan of money and no charge for the use of money. Before it can be found that the transaction is infected with usury, the transaction must be entirely reconstructed as a loaning of money by Colonial Finance Company to Patsy Auto Sales, Inc. and Maple Battle, and as there is no evidence whatever of any dealings of any description between Colonial Finance Company and Battle at or before the time of this transaction, if there is to be a reconstruction, it must be on the foundation of the dealings between Colonial Finance Company and Patsy Auto Sales, Inc. Before the form can be disregarded, the evidence must establish an identity of the two in their dealings with the plaintiff.

The only evidence on this subject is found in the testimony of Pat Weintrop, who was called by the plaintiff, and who said that he was doing business as Patsy Auto Sales, Inc. He testified that the selling price of the automobile was $6,000.00, upon which there was a credit of $2,000.00, leaving $4,000.00 as the balance, which was to be financed, which means, as we understand it, that some arrangement was necessary so that the buyer could pay that balance in installments. Weintrop testified that the note was for $5,654.40. He was then asked how that was computed, to which he responded: "Well, I don't know, just exactly. We have an authority of the Finance Company that tells us what the payments are, a chart." He then testified as follows:

"Q. Do I understand that the Finance Company computes in advance how you are to be paid for a balance of $4,000.00?

"A. Well, it is much simpler when we have a chart to look at.

"Q. And who supplies you with the chart, do you say?

"A. The Finance Company we are doing business with.

"Q. In this case?

"A. Colonial Finance Co."

All this evidence tends to prove is that the Colonial Finance Company furnished Patsy Auto Sales, Inc. a method of computing the instalment selling price from a given cash selling price. The only conceivable reason for furnishing this in-

formation and the forms was the hope that Patsy Auto Sales, Inc., would discount or sell the note to Colonal Finance Company for the amount that would have been received by Patsy Auto Sales, Inc., had the sale been for cash—in this instance, $4,000.00—which was paid for the note.

The plaintiff contends that these circumstances stamp the transaction as a usurious lending of money, notwithstanding its form is that of a negotiation or sale of a note. Plaintiff, in his petition, and his counsel, in their arguments, assert that this transaction violates the Small Loan Act (§8624-50 et seq., GC), but that act applies only to loans of $1,000.00 or less, and even as to transactions involving $1,000.00 or less, it is expressly provided in that act that: "Nothing herein shall preclude the acquiring, directly or indirectly, by purchase or discount, of a bona fide obligation for goods or services when such obligation is payable directly to the person who provided such goods or services."

This distinction between a loan and a sale or discount of a note, recognized in the Ohio Small Loan Act has been recognized in all the text books and cases on the subject of interest and usury, and as all states have general statutes limiting interest rates similar to Ohio's general statute on that subject, the cases are numerous. We shall refer to a few.

In 55 Am. Jur., 344 & 345, it is stated:

"Bills and notes, like other property, may be bought and sold on such terms as may be agreed upon, and a discount at any rate, although paid by a credit to account, is not usurious, if value has once been given, unless the transfer is merely a cloak for a usurious loan or violative of a usury statute covering discounts as well as loans. And the fact that the holder of an instrument is required to indorse it or otherwise guarantee it, so that he becomes conditionally liable to pay the purchaser an amount greater than the legal interest and the sum he received, is held by many authorities, although some decisions have taken other positions, not to constitute the transaction a loan, but rather a valid sale of a chattel with a warranty of soundness."

It is significant that in this case Patsy Auto Sales, Inc., guaranteed this note only to the extent of $500.00. There was no obligation on its part beyond that. This whole subject was exhaustively treated in the recent quo warranto proceeding in which the attorney general sought to oust the Contract Purchase Corporation from doing business in Michigan. The case is Attorney General v. Contract Purchase Corporation, 327 Mich., 636. The nature of the proceeding made it necessary to consider the entire course of business of defendant. From an examination of the opinion, it will be found that the

defendant engaged in all the practices either proven or implied against these defendants. The court held that the defendant was not engaged in loaning money, and, therefore, had not violated the statute against usury. The ninth paragraph of the syllabus shows the similarity of the transactions to that under review in the case at bar. We quote that paragraph:

"The mere fact that a corporation purchased a note at a discount beyond the legal rate of interest does not constitute the transaction a usurious one and solicitation of such business from automobile dealers and furnishing schedules for that purpose and blank forms would not affect a transaction involving the bona fide sale of an automobile, valid when made."

In that case, as in the case at bar, the discount far exceeded the allowable rate of interest on a loan of this amount, although the Small Loan Act authorizes a rate in excess of this discount on loans of $300.00 or less. As to this, the court in that case said at 643: "However, in the absence of a statute limiting the rate of discount on notes and commercial paper, a bona fide sale of such paper is not deemed usurious no matter how low the price paid."

This subject of sale of choses in action, as it relates to usury, is elaborately discussed in an annotation to the case of Milana v. Credit Discount Co., (27 Cal. [2d.] 335) 163 P. (2d.) 869, 165 A. L. R. 621. It makes extended discussion unnecessary.

We are of the opinion that the evidence discloses an actual sale of an automobile for a cash payment of $2,000.00 and for 24 deferred payments of $235.60, payable monthly, making a total deferred payments of $5,654.40, upon which $3,999.40 had been paid at time of trial in the Common Pleas Court.

A judgment by this court declaring the rights in conformity to this conclusion may be prepared.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur.